Oliver F. MARSTON
v.
L. E. GANT et al.
Civ. A. No. 200-72-R.

United States District Court,
E. D. Virginia,
Richmond Division.
Dec. 11, 1972.

Herndon P. Jeffreys, Richmond, Va., for plaintiff.

Richard W. Hogan, Richmond, Va., for Gant.

T. S. Ellis, Richmond, Va., for Okabe.

R. Harvey Chappell, Jr., Richard W. Hogan, Richmond, Va., for Thalhimers.

Robert L. Burruss, Jr., Robert E. Payne, Richmond, Va., for Best Prod.

E. Milton Farley, III, Richmond, Va., for Sears.

Howard W. Dobbins, Richmond, Va., for Carousel.

Richard W. Hogan, Richmond, Va., for The Home Shops.

J. Calvitt Clarke, Jr., Nathan Smith, Richmond, Va., for United Overton.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Oliver F. Marston, brings this action for the infringement of United States Letters Patent No. 2,716,231 against numerous defendants. One of these defendants, Okabe Metal Industries Co. (Okabe), a Japanese corporation, is charged in the complaint with violations of both 35 U.S.C. § 271(a) and § 271(b). Okabe here moves the Court to dismiss the action against it for lack of jurisdiction over the person. Evidence has been submitted in the form of affidavits and answers to interrogatories, and the matter is now ready for disposition. The issue is the scope of the Virginia long-arm statute.

From the evidence before it, the Court finds the following facts:

Both Okabe's manufacturing and sales operations are located solely within Japan. The company did not export the furniture which is the subject matter of the patent involved in this case, but rather sold it to independent Japanese exporters. These exporters in turn sold these goods to distributors located in various parts of the world, including the United States. In the process of such distribution, Okabe exercised no control over sales or methods of sale, and has no ownership interest in such exporters or distributors. They, under these circumstances, could not be considered to be agents of Okabe.

Okabe has never manufactured, sold or purchased any goods in Virginia nor has it shipped or directed the shipment of goods into Virginia. It has never entered into contracts to supply goods or services in Virginia. Indeed, the record reveals complete and utter lack of contact on the part of Okabe with Virginia or anyone therein, except as has arisen as a consequence of this law suit.

Plaintiff asserts personal jurisdiction over Okabe by means of service of process on the Secretary of the Commonwealth of Virginia. Such service is allowed by the Virginia "long-arm" statute, Va.Code Ann. § 8-81 (1972 Cum. Supp.), for those actions falling within the express terms of that statute. This statute may be employed in a federal action by virtue of Rule 4(d)(7), Fed.R. Civ.P., which provides in part as follows:

. . . it is also sufficient if the summons and complaint are served . . . in the manner prescribed by the law of the state in which the district court is held.

Accordingly, the issue before the Court is whether process can be served against

**1124**

Okabe under the Virginia long-arm statute. Because of the Court's disposition of this issue, it does not reach any constitutional questions that might otherwise be raised.

The Virginia long-arm statute, Va. Code Ann. § 8–81.2 (1972 Cum.Supp.), provides in pertinent part the following:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply service or things in this State;

(3) Causing tortious injury by an act of omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State . . . .

The facts of this case clearly do not support personal jurisdiction on either the first or second clauses of § 8–81.-2(a). Okabe has never made a contract to supply goods or services within Virginia. It has none of the contacts with the State that other courts have found to support a conclusion of "transacting any business." Okabe did not personally deliver its goods to Virginia. Shealy v. Challenger Mfg. Co., 304 F.2d 102 (4th Cir. 1962). It did not retain sales representatives within the State nor did it apparently advertise here. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Plaintiff in its memorandum voices some rather vague suspicions concerning possible contacts by Okabe with defendant Sears. Even if the Court were to accept its suspicions as truth, however, there is no suggestion that those contacts, if any, took place within Virginia.

■ Even though Okabe has no business contacts with Virginia, personal service may, as hereafter discussed, be effected under the tortious conduct provisions of the long-arm statute, since a patent infringement is a tort. Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L. Ed. 819 (1931); Welch Scientific Co. v. Human Engineering Institute, Inc., 416 F.2d 32 (7th Cir. 1969). Plaintiff urges that the requirements both of section (a)(3) and of (a)(4) are met.

Section 8–81.2(a)(3) allows long-arm service on anyone who causes tortious injury by an act or omission in Virginia. It is undisputed for purposes of this motion that tortious injury occurred in this state. The difficult issue is whether the act of infringing also occurred within Virginia.

Title 35 U.S.C. § 271 defines patent infringement as follows:

(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

Although the complaint alleges both types of infringement, the record reveals that Okabe at the most could be guilty only of contributory infringement under § 271(b). Okabe neither made nor used the furniture in question in Virginia, nor did it sell the goods either by itself or through a sales representative or other agent. Whether the Court can conclude that any facts support the allegation that Okabe "actively induced" infringement in Virginia depends on the meaning of that term.

■ ■ To "actively induce" patent infringement means in essence to aid and abet such infringement by another. Houston v. Kearney & Trecker Corp., 179 F.Supp. 490 (E.D.Mich.1959); Senate Report No. 1979, 1952 U.S.Code Cong. & Adm. News, p. 2421. The use of the adverb "actively" suggests, and the Court concludes, that some affirmative act is necessary for a violation of § 271(b). *Cf.* Knapp-Monarch Co. v. Casco Products Corp., C.A.Ill., 342 F.2d 622 (1965).

■ Although infringement by others is alleged to have occurred in Virginia, no affirmative acts by Okabe in this regard are cited by plaintiff. Okabe, on the other hand, presents affidavits showing that the company never communicated information to Virginia, nor, either personally or by agents, took steps that would have tended to aid or abet the alleged infringement in Virginia. While the Court is sympathetic to plaintiff's argument that an alien company should be required to answer to suit in any district where its goods are resold after it has sold to exporters with knowledge that the goods will be shipped to the United States, it simply cannot so hold within the context of § (a)(3) in the absence of affirmative acts tending to induce infringement.

■ The final basis on which plaintiff seeks to predicate jurisdiction is Va.Code § 8–81.2(a)(4), which allows long-arm service for tortious injuries incurred in the State by an act outside of it, where the tortfeasor has certain minimum contacts with the State. The absence of business contacts by Okabe with Virginia has already been cited. the only question remaining, therefore, is whether Okabe "engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State."

Section (a)(4), together with the other provisions of the long-arm statute, was intended by the Virginia legislature to give the Commonwealth jurisdiction over nonresidents to the extent allowed by the due process clause. Carmichael v. Snyder, 209 Va. 451, 164 S.E.2d 703 (1968); John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664 (1971). Accordingly, § (a)(4) must be interpreted with a view toward extending personal jurisdiction, rather than restricting it. The limits of the due process clause were the subject of the United States Supreme Court's decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in which the Court held that the defendant must have certain minimum contacts with the forum such that the suit does not offend "traditional notions of fair play and substantial justice." Such contracts are met only when "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

The importance of these constitutional concerns in interpreting the Virginia statute is that the "persistent course of conduct" and "substantial revenue" provisions seek to codify in terms what the Virginia legislators took to be the due process limits on long-arm jurisdiction. In other words, the contacts which these clauses require are those minimum contacts which a party must have in order to have purposefully availed himself of the protection of Virginia law. See John G. Kolbe, Inc. v. Chromodern Chair Co., *supra.* It is within this frame of reference that the Court must examine Okabe's situation.

The record is devoid of any course of conduct by Okabe in Virginia. Lacking any such course of conduct, the revenue which it derives from sales ultimately made within Virginia at the least must be of somewhat greater amounts than would perhaps be needed were it

coupled with some business transactions within the State. The fact that Okabe's Virginia revenue comes only indirectly, from sales to exporters, rather than from direct sales to consumers within the State, is not material, however. The sale of goods to exporters in Japan, with knowledge that they would be eventually resold throughout the entire United States, is sufficient for the Court to infer that Okabe purposefully availed itself of Virginia's protection if the revenue it derives from the ultimate sales in Virginia is of a sufficient amount as to represent "substantial revenue." Unfortunately, there is no evidence before the Court concerning gross sales of Okabe's products in Virginia or the percentage of its total revenue derived from Virginia sales. See Gillmore v. J. S. Inskip, Inc., 54 Misc.2d 218, 282 N.Y.S.2d 127 (1967). For a motion such as this, where the defendant has presented evidence suggesting personal jurisdiction has not been effected, the burden of proof is on the plaintiff to establish jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 8 L.Ed. 1135 (1936); Haynes v. James H. Carr, Inc., 427 F.2d 700 (4th Cir. 1970). The Court is thus justified in granting Okabe's motion and dismissing the action.

However, the Court takes note of the difficulties involved in discovering a Japanese party for proceedings in Virginia. Although both parties represented to the Court that this motion could be decided upon the filing by Okabe of answers to interrogatories propounded by plaintiff, the Court may, in its discretion, allow additional discovery. Leasco Data Processing Equipment Corp. v. Maxwell, 319 F.Supp. 1256, 1263 (S.D. N.Y.1970). Accordingly, it will stay its dismissal order for sixty days, giving the plaintiff an opportunity to submit such additional evidence as he deems proper. If, after sixty days, no new evidence is submitted, Okabe will stand dismissed as a party to this suit.