ENGINEERED SPORTS PRODUCTS,
a corporation, et al., Plaintiffs,

v.

BRUNSWICK CORPORATION, a corpo-
ration, et al., Defendants.

No. C 316–72.

United States District Court,
D. Utah, C. D.

June 12, 1973.

David V. Trask, Salt Lake City, for plaintiffs.

Philip A. Mallinckrodt, Salt Lake City, for defendants Calzaturificio Garmont, C. Garbuio & Co., S.A.S.; Schufabrik Henke & Co., A.G.; Kastinger & Company, K.G.; Calzaturificio Guiseppe Garbuio, S.A.S., d/b/a La Dolomite; Societe Anonyme Des Chaussures Le Trappeur; Nordica Di Vaccari, S.N.C., Adone & Adriano; Humanic, Heinisch & Mayer Rieckh, K.G.; Sears, Roebuck & Co.

H. Ross Workman (Strong, Poelman & Fox), Salt Lake City, for defendant J. C. Penney Co., Inc., Linda G. Bierman, Jordan B. Bierman, Kenneth J. Stempler (Bierman & Bierman), New York City, of counsel.

Graham Dodd (Kirton, McConkie, Boyer & Boyle), Salt Lake City, for defendants Wolverine Worldwide Inc. and Raichle Sportschuh, A. G. Herbert Cohen and Victor M. Wigman (Wigman & Cohen), Arlington, Va., of counsel for Raichle Sportschuh, A.G.

Tom Ford (Fabian & Clendenin), Salt Lake City, for defendant Zinik's Sporting Goods Co.

Edward W. Clyde (Clyde, Mecham & Pratt), Salt Lake City, for defendants Wolfe's, Inc. and UDISCO.

David S. Geldzahler and Jon C. Heaton (Prince, Yeates, Ward, Miller & Geldzahler), Salt Lake City, for defendant Koflach Sportgerate, G. m. b. H. Cushman, Darby & Cushman, Washington, D. C., of counsel.

Andrew R. Hurley (Brayton, Lowe & Hurley), Salt Lake City, for defendant Brunswick Corp.

## MEMORANDUM

ALDON J. ANDERSON, District Judge.

Plaintiffs claim infringement of their United States Letters Patent No. 3,581,412 entitled, "Inner Boot and Method for Forming the Same." The patent describes an inner boot or bladder which may be inserted into a ski boot and a process by which the inner boot may be custom fitted to the foot by the injection of a foam or other molding substance between its pliable interior and exterior linings. Joined by the complaint in a class as defendants are ski boot manufacturers, distributors and local retailers. The named alien defendants (hereinafter "defendants" or "movants"), European ski boot manufacturers, have moved to quash service of process which was made pursuant to Utah's "long-arm" statute, Utah Code Ann. §§ 78-27-22 through 28,[1] and Fed. R.Civ.P. 4(e), and to dismiss for lack of in personam jurisdiction.

---

1. Utah Code Ann. § 78-27-22 provides:

It is declared, as a matter of legislative determination, that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this state and persons of other states.

The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. Utah Code Ann. § 78-27-24 provides in part:

Any person, notwithstanding section 16-10-102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

. . . . . .

(3) The causing of any injury within this state whether tortious or by breach of warranty;

Utah Code Ann. § 78-27-26 provides:

Only claims arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this act.

According to the materials before the court, annual domestic sales of foam filled, custom fitted ski boots have grown in four years from almost nothing to approximately 400,000 pairs. Despite their patent, plaintiffs have not shared substantially in the market's growth which has redounded instead to the benefit of the movants and the class. The ski boots of movants' manufacture which reach the domestic market do so through exclusive distributors. In the case of Raichle, for example, title to the ski boots destined for the domestic market (about 25% of Raichle's total production) passes in Europe to the exclusive distributor. Raichle then ships the boots at the buyer's risk to the United States where they are channeled to retailers. Approximately .6% of Raichle's total production or about ⅙₀ of its American shipments ultimately are purchased by consumers in Utah. Extensive advertising in the domestic market emphasizes heavily the trademarks of each of the alien defendants. In the cases of Garmont, Henke, Kastinger, La Dolomite, Le Trappeur, Nordica, Humanic and Tecnica promotional materials are in part provided to the distributors by the manufacturers. In some instances, promotional ventures, such as sponsorships, are undertaken by the manufacturer. None of the defendants maintains an office, employs persons, contracts to sell goods, owns real estate or is qualified to do business in Utah. However, four of the defendants, Raichle, Koflach, Le Trappeur and Nordica, have dispatched executive officers to Utah where they have discussed and purchased plaintiffs' ski boot materials. Plaintiffs allege numerous other contacts between movants and this forum and propose extensive discovery proceedings to establish, if possible, these allegations. However, the materials presently before the court are sufficient to support in personam jurisdiction over each of the movants.

The Utah law authorizes out-of-state service upon parties who cause "any injury within this state whether tortious or by breach of warranty." Utah Code Ann. § 78–27–24(3). This broad formulation is intended "to assert jurisdiction over nonresident defendants [at least in actions brought by Utah citizens] to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22. The Utah Supreme Court has confirmed this intention. Foreign Study League v. Holland-America Line, 27 Utah 2d 442, 497 P.2d 244, 245 (1972); Hydroswift Corp. v. Louie's Boats & Motors, Inc., 27 Utah 2d 233, 494 P.2d 532, 533 (1972).

In *Hydroswift* the tort of conversion was alleged to have occurred outside the forum causing financial loss to the local plaintiff. No other contacts with the forum appear. In a brief opinion, the court apparently reached the unavoidable determination that this claim was encompassed by the commodious wording of the long-arm statute. However, the court held the claim to be barred from the Utah forum by the Fourteenth Amendment. Hydroswift Corp. v. Louie's Boats & Motors, Inc., *supra*, 494 P.2d at 533.

 As a result, this court is bound to interpret the long-arm statute broadly, limiting its application in the present circumstances only where the Fourteenth Amendment requires. In this regard, the Utah court's interpretation of the Fourteenth Amendment's limiting effect upon the statute may be given weight but is not binding. *E.g.,* Aftanase v. Economy Baler Co., 343 F.2d 187, 192–193 (8th Cir. 1965); Sporcum, Inc. v. Greenman Bros., Inc., 340 F.Supp. 1168, 1175–1176 (S.D.Iowa 1972). *See* Vassar v. Raines, 274 F.2d 369, 371 (10th Cir. 1959), *cert. denied,* 362 U.S. 982, 80 S.Ct. 1069, 4 L.Ed.2d 1016 (1960).[2]

---

2. The *Hydroswift* case, discussed in the text, differs from the present since it is here alleged that the tort occurred in the forum, the defendants' products are in the forum and related contacts between the forum and the alien defendants are alleged.

█ It is, of course, the watershed cases of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which describe the constitutional limits of personal jurisdiction. Essentially,

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

International Shoe Co. v. Washington, supra at 316, 66 S.Ct. at 158 (citations omitted). Traditional notions of fair play and substantial justice require a qualitative analysis of each defendant's contacts with the forum in order to ensure fairness and reasonableness to the defendants and territorial respect for sister states. Id. at 316–319, 66 S.Ct. 154; Mountain States Sports, Inc. v. Sharman, 353 F.Supp. 613, 615–616 (D. Utah 1972).

██ In the present case, the most compelling contacts alleged to exist between this district and the defendants involve the causing by them of foreseeable tortious injury here. Patent infringement is a tort. E.g., Marston v. Gant, 351 F.Supp. 1122, 1124 (E.D.Va. 1972). Since a determination of infringement must await trial and a determination of the patent's validity, the good faith allegation of the tort with supporting evidence of its connection to the forum is sufficient to allow its consideration for the purposes of the present motions. See Mountain States Sports, Inc. v. Sharman, supra, 353 F. Supp. at 617 (and authorities cited).[3]

██ However, movants attack the good faith allegation of tortious conduct on the ground that, even assuming the validity of the patent and its infringement by those ski boots manufactured by them which have found their way into the forum, the actions of the movants themselves, at least insofar as properly alleged and supported by the plaintiffs, do not violate the infringement statute. See Marston v. Gant, supra. The statute, 35 U.S.C. § 271, provides in part:

> (a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

The Utah court has considered generally that state's long-arm statute in two leading cases, both upholding the lower court's finding of jurisdiction. Foreign Study League v. Holland-America Line, 27 Utah 2d 442, 497 P.2d 244 (1972) (3–2 decision in which the dissent suggests that the court's liberal view of jurisdiction undermines the earlier Zale case); Hill v. Zale Corp., 25 Utah 2d 357, 482 P.2d 332 (1971). However, in these cases the court appears to have concerned itself principally with the question of whether a foreign corporation was "doing business" in the state and was therefore amenable generally to suit there. In the present case it is not argued that movants are "doing business" and therefore are amenable generally to suit in this district. It is rather argued that personal jurisdiction exists in the present narrow circumstance because the claim arises out of the defendants' contacts with the district. See, e. g., Utah Code Ann. § 78–27–26, set out in note 1 supra; McGee v. International Life Insurance Co., 355 U.S. 220, 223–224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Ajax Realty Corp. v. J. F. Zook, Inc., 41 U.S.L.W. 2339 (4th Cir., 1972); J. W. Moore, 2 Moore's Federal Practice ¶ 4.25[2]–[5] (1970).

3. As noted in the authorities cited, it would be impolitic to tie the jurisdictional question to final determination of tort liability. On the other hand, the connection of the tort to the forum is a matter which lends itself to some preliminary determination for which the parties have submitted supporting materials.

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

The United States patent laws protect only domestic markets. Thus the making, using or selling of a patented invention outside the United States is not proscribed unless it induces or contributes to a domestic infringement. *Cf.* Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). Plaintiffs' patent covers both the design of an inner boot and the method of its injection with a molding substance. Defendants' ski boots arrive in the United States and in this district within the knowledge and contemplation of the defendants if not within their immediate control. Here the boots are injected. In the opinion of the court, 35 U. S.C. § 271(c) prohibits the "sale", whether or not domestic, of an "apparatus for use in [the domestic practice of] a patented process," such as the ski boot injection process, where the seller knows the apparatus will reach domestic markets and there will be found "especially adapted for an infringement" of the patent. Therefore, plaintiffs' claim of tortious conduct is presently sufficient where foreign sale of the ski boots by the defendants, their purposeful domestic distribution within the knowledge of the defendants and their injection in this forum are properly alleged and supported. Such is the case. Furthermore, it appears that 35 U.S.C. §§ 271 (b) and (c) were meant to confirm the previous principle of contributory infringement based upon aiding and abetting the direct infringer. Jones v. Radio Corp. of America, 131 F.Supp. 82, 83–84 (S.D.N.Y.1955). The foreign manufacture and sale of ski boots and their purposeful introduction into distribution channels leading to domestic markets where infringing sales occur would appear to be such an aiding and abetting. *Cf.* Fromberg, Inc. v. Thornhill, 315 F.2d 407, 411–412 (5th Cir. 1963). But *cf.* Marston v. Gant, *supra,* and Olin Mathieson Chemical Corp. v. Molins Organizations, Ltd., 261 F.Supp. 436 (E. D.Va.1966) (requiring the acts of inducement to occur within the forum but only in order to meet the special requirements of the Virginia long-arm statute).[4] To conclude otherwise would be to sanction the foreign manufacture of patented devices for ultimate sale in the United States, a result in conflict with the statute's purpose. *Cf.* Deepsouth Packing Co. v. Laitram Corp., *supra,* 406 U.S. at 526–527, 92 S.Ct. 1700. Finally, 35 U.S.C. § 271(a) might be invoked properly despite the apparent independence from the defendants of the domestic ski boot distributors upon the ground that the distributors generate domestic business which benefits the defendants and which establishes a quasi-agency relationship thus tying the domestic sales to the defendants. *See, e.g.,* Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231, 235 (9th Cir. 1969); SCM Corp. v. Brother International Corp., 316 F.Supp. 1328, 1335 (S. D.N.Y.1970). *But see, e. g.,* Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292, 297–298 (6th Cir. 1964). *See generally,* 39 Brooklyn L.Rev. 229, 234–

---

4. If acts of inducement within the forum were required, the visits to the forum of the executive officers of four of the movants and the distribution of advertising materials in the forum at the instigation of others of the movants would probably suffice. *See* Olin Mathieson Chemical Corp. v. Molins Organizations, Ltd., 261 F.Supp. 436, 441–442 (E.D.Va.1966). However, if inducement by acts in the forum were required and if inducement were the only claim of tort by the plaintiffs, the court might require further discovery before considering the jurisdictional contacts said to arise from movants' commission of a tort.

39 (1972); 5 Int.L. & Politics 575 (1972). *Cf.* Curtis Publishing Co. v. Cassel, 302 F.2d 132 (10th Cir. 1962); Teledyne Ryan Aeronautical Co. v. Montgomery Ward & Co., 326 F.Supp. 813, 818 (D.Colo.1971). In view of the proper allegations of tortious conduct, the court may examine the contacts of the defendants to the forum which are claimed to result from the tort.

 The plaintiffs, whose business is relatively localized, have without contradiction established substantial financial loss in the forum as a result of the alleged tort. Such loss may be described as injury and under the present facts is a cognizable contact with the forum. *Cf., e.g.,* American Eutectic Welding Alloy Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971); Spectacular Promotions, Inc. v. Radio Station WING, 272 F.Supp. 734 (E.D. N.Y.1967); Hydroswift Corp. v. Louie's Boats & Motors, Inc., *supra.* The foreseeability of this injury follows from the defendants' obvious knowledge and intention that the sale of ski boots to domestic distributors would lead to their resale in the United States and the forum. *See, e.g.,* Fulton v. Chicago, Rock Island, and Pacific RR. Co., 481 F.2d 326 (8th Cir. 1973), Ajax Realty Corp. v. J. F. Zook, Inc., 41 U.S.L.W. 2339 (4th Cir., 1972); Duple Motor Bodies, Ltd. v. Hollingsworth, *supra,* 417 F.2d at 235 n. 8; Marston v. Gant, *supra,* 351 F.Supp. at 1126.[5] The place of the tort itself may also be said to be within the district since it is here that the injury is suffered. *E.g.,* Duple Motor Bodies, Ltd. v. Hollingsworth, *supra,* 417 F.2d at 233–234. Furthermore, the infringing ski boots are here as the result of a merchandising endeavor initiated by defendants. *E.g.,* id. at 235; SCM Corp. v. Brotherhood International Corp., *supra.*

 However, defendants argue that the number of infringing ski boots in Utah is insubstantial (the ski-crazed element of this state's populace notwithstanding) and therefore cannot constitute a significant contact with the forum. *See* Velandra v. Regie Nationale des Usines Renault, *supra,* 336 F.2d at 298. But where, as here, suit is brought against alien defendants, the court properly may consider the aggregate presence of the defendants' apparatus in the United States as a whole. Due process or traditional notions of fair play and substantial justice should not immunize an alien defendant from suit in the United States simply because each state makes up only a fraction of the substantial nationwide market for the offending product. *Cf.* Brunette Machine Works v. Kockum Industries, Inc., 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972) (discussing patent venue for alien defendants).

 In connection with the alleged tort, it further appears that the defendants' trademarks, trade names and service marks occur extensively in local advertising, presumably enjoying the protection of Utah law. Utah Code Ann. §§ 70–3–2(6); 70–3–10(2)(e). And, as earlier noted, each of the defendants has either sent its own officers or advertising brochures (sent through distributors) or both into the forum in connection with the alleged tort.

 Analysis of defendants' contacts with the forum is incomplete without consideration of the factual environment in which they occur. Here it appears that the plaintiffs are individuals and a relatively small, local corporation and partnership while the defendants are business entities of substantial financial muscle and international ken, thus suggesting a jurisdictional preference for the local forum. *See* McGee v. International Life Insurance Co., *supra,* 355 U.S. at 223–224, 78 S.Ct. 199; International Shoe Co. v. Washington, *su-*

---

5. As suggested earlier in the text, the purposeful merchandising of ski boots through exclusive domestic distributors may establish a quasi-agency relationship between defendants and distributors which suggests further contact between the forum and the defendants. The court finds it unnecessary to determine this point.

*pra*, 326 U.S. at 317, 66 S.Ct. 154 (an "estimate of inconveniences" is appropriate to a jurisdictional determination). This preference is strengthened perhaps in the present case since the apparent choice presented the court is not between domestic forums but between domestic and alien forums.[6] *Cf*. Brunette Machine Works, Ltd. v. Kockum Industries, Inc., *supra* 406 U.S. at 709–710, 92 S.Ct. 1936 (discussing venue). To require the United States patent holder to sue in Europe upon his claim of infringement by the defendants would as a practical consequence preclude suit against these defendants altogether or result in the anomolous pursuit in alien courts of United States patent law—a pursuit difficult at best for domestic courts.

The international aspects of this case may, on the other hand, recommend jurisdictional restraint on the ground that to exert jurisdiction in the present circumstance could at best result in a money judgment against the defendants which is unenforceable here because no assets are here and dishonored in Europe as an extrajurisdictional act and a violation of comity. In addition, such judgments may impair or affront international trade. Duple Motor Bodies, Ltd. v. Hollingsworth, *supra*, 417 F. 2d at 239–240 (dissenting opinion); Note, The Long-Arm Reaches the International Manufacturer—A Criticism, 8 Willamette L.J. 54, 59–66 (1972); 5 Int. Law & Politics 575, 587–89. *Cf*. Lauritzen v. Larsen, 345 U.S. 571, 581–593, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). However this ground is faulty since injunctive relief is available which, through nationwide domestic enforcement, may protect the plaintiffs from the domestic introduction of infringing boots by the defendants or those acting in concert or participation with them. *See* 35 U.S.C. § 283; Rayonier Inc. v.

Georgia-Pacific Corp., 281 F.Supp. 687, 688 (W.D.Wash.1967). *Cf*. Deepsouth Packing Co. v. Laitram Corp., *supra*, 406 U.S. at 523, 92 S.Ct. 1700 (nationwide injunction).

Of course, if domestic injunctive relief is all that the plaintiffs can count on, it may be argued that the suit should be limited to the domestic distributors and retailers upon whom the injunction would have its active effect. However, the better policy is to sue the manufacturer. *See* Salem Engineering Co. v. National Supply Co., 75 F.Supp. 993, 999–1000 (W.D.Pa.1948). The manufacturer is the party of greatest interest in a determination of the patent's validity, which is the principal substantive issue raised by the defense, and has the greatest access to the relevant evidence. Thus suit against the distributors or retailers probably would result in the informal participation by the manufacturers as the correspondence before the court among the manufacturers, distributors and plaintiffs implies. Judgments against the distributors probably would result in indemnity suits against the manufacturers as the Brunswick Corporation affidavit suggests. *See* Utah Code Ann. § 70A–2–312(3). And such limited judgments might not satisfactorily protect the plaintiffs since the manufacturers would be free to employ new distributors and possibly to relitigate the issues of patent infringement and perhaps patent validity. On balance, the factual environment in which the defendants' contacts with the forum occur strongly suggests the appropriateness of a finding of jurisdiction.

The court has carefully reviewed each of the arguments and materials presented and concludes that the present suit is encompassed by Utah's long-arm statute and is not offensive to the Fourteenth Amendment.

---

6. Thus the issue of territorial respect for sister states is not relevant to the present inquiry.