HUGHES TOOL COMPANY, a Delaware corporation, Plaintiff-Appellee,

v.

John H. MEIER and John R. Suckling, Defendants-Appellants,

Anthony Hatsis et al., Defendants.

Nos. 73-1234, 73-1235.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 11, 1973.

Decided Oct. 23, 1973.

Edward W. Clyde, Salt Lake City, Utah, Howard M. Jaffe, New York City, James L. Wadsworth, Las Vegas, Nev., D. Martin Cook, Los Angeles, Cal., for plaintiff-appellee.

Christensen, Gardiner, Jensen & Evans, Salt Lake City, Utah (L. R. Gardiner, Jr., Salt Lake City, Utah, on the brief), and Wyshak & Wyshak, Los Angeles, Cal. (Robert H. Wyshak, Los Angeles, Cal., on the brief), for defendant-appellant John H. Meier.

Decastro, West & Chodorow, Inc., Los Angeles, Cal. (Mark D. Pastor, Los Angeles, Cal., on the brief), Nielsen, Conder, Hansen & Henriod, Salt Lake City, Utah (W. Eugene Hansen, Salt Lake City, Utah, on the brief), for defendant-appellant John R. Suckling.

Before CLARK,* Associate Justice, LEWIS, Chief Judge, and HILL, Circuit Judge.

PER CURIAM.

This interlocutory appeal, pursuant to Section 1292(b) of the Judicial Code [28 U.S.C. § 1292(b) (1971)], tests the availability to Hughes Tool Company, appellee, of Utah's long arm statute, Utah Code Ann. § 78-27-22, et seq. (Supp.1973) to acquire in personam jurisdiction over appellants who are non-residents of Utah. Appellee is a Delaware corporation with its principal place of business in Texas and with a valid permit to do business in Utah. Appellants contend that Utah's long arm stat-

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

ute by its own terms is restricted to use by plaintiffs who are citizens of Utah. On motions to quash service and to dismiss, the trial court decided that Utah's long arm statute was available to appellee, but it allowed this interlocutory appeal since disposition here might be dispositive of the case. Thereafter this court restricted the appeal to the issue "Relating only to non-residency of the foreign corporation and not including, at this stage of the appeal, the question of sufficiency of contacts for jurisdiction over the appellants."

### 1. Background of the Litigation:

The appeal comes here on the pleadings and the stipulation of the parties. Appellee claims that appellants Meier and Suckling conspired with Anthony Hatsis, Toledo Mining Company and Globe, Incorporated, all of whom are citizens of Utah and other named parties who are nonresidents of that state but are not parties to this appeal. The gist of the alleged conspiracy was to sell appellee certain mining properties, located in Nevada, for amounts of money far in excess of their value by corrupting appellee's trusted agents to forsake their duties and to participate in the scheme to defraud appellee.

Appellee brought suit pursuant to 28 U.S.C. § 1332 (1971) seeking an accounting and restitution. Meier and Suckling moved separately to quash service and dismiss on various grounds, one of which was that Utah's long arm statute could not be used by appellee because it was a nonresident corporation. However the trial court asserting jurisdiction under the long arm statute denied both motions.

### 2. Utah's Long Arm Statute:

It is true that Utah's Act[1] differs in one respect from the uniform long arm statute: Section 78–27–22 is devoted to a statement of legislative intent declaring its purpose in enacting the Act to be to "provide its *citizens* with an effective means of redress against non resident persons, who . . . incur obligations to citizens entitled to the state's protection." And it further declares that "to ensure maximum protection to *citizens* of this state, [the Act] should be applied so as to assert jurisdiction over non resident defendants . . ." (Emphasis in each instance has been supplied.) Other states have also inserted purpose sections or clauses using the word "resident" rather than "citizen" in their Acts (e. g. Texas, Mississippi). However, the operative or enacting section of Utah's Act, Section 78–27–24, as well as those of Texas and Mississippi, are substantially identical to the Uniform Act. See, Uniform Interstate and International Procedure Act, 9B U.L.A. § 1.03 (1966). Section 78–27–24 grants state court ju-

[1]. Laws of Utah, 1969, Chapter 246, § 1 to § 3, Utah Code Ann. § 78–27–22, et seq., (Supp.1973) provides in relevant part:

"Section 1. Redress against non-residents—Legislative intent—Maximum protection for residents.

"It is declared, as a matter of legislative determination, that the public interest demands the state provide its citizens with an effective means of redress against non resident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection . . ."

"The provisions of this act, to insure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over non resident defendants to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution.

"Section 3: State Court jurisdiction— Acts which subject non-residents to jurisdiction.

"Any person, notwithstanding section 16–10–102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of any business in this state.

(3) The causing of any injury within this state whether tortious or by breach of warranty."

risdiction, without any restriction whatever, providing in pertinent part that: "*Any person* . . . . whether or not a citizen or resident of this state, who . . . . does any of the following enumerated acts, submits himself . . . . to the jurisdiction of the courts of this state as to *any claim* arising from: (1) The transaction of *any* business within this state;" (Emphasis supplied). This language neither expressly nor by implication precludes nonresidents who have a permit to do business in Utah from using the Act to protect themselves against nonresidents who have incurred obligations in Utah to such persons. Indeed, the Act in no instance says that it was adopted solely for the protection of Utah citizens, residents or domestic corporations. While it is true that the motivation of the Utah Legislature was to protect its electors, Utah citizens, it specifically authorized jurisdiction, in the operating or enacting section of the Act, of "*any* claim" arising from *any* of the enumerated acts set out in the statute that were performed by a nonresident. Moreover, other sections of the Act support this construction. For example, Section 78–27–23 *setting forth* "Definitions" used in the Act defines "any person" as being "any individual, firm, company, association or corporation" without specifying any limitation whatever; and "transaction of business within the state" is declared to include activities of a nonresident "which affect persons or businesses within the state of Utah" without limitation to citizens. A foreign corporation lawfully authorized by the state to do business there is clearly a "business within the state of Utah."

*3. The Application of the Act:*

In the light of these considerations we find that the Act is available to the appellee. We are supported in this conclusion by other rationales:

(a) In both Mississippi and Texas the courts have held that their statutes are available to nonresidents despite the language of each limits service on nonresidents to those acts which cause injury to "residents." In C. H. Leavell & Co. and Peter Kiewit Sons' Co. v. J. V. Doster, 211 So.2d 813 (1968) the Supreme Court of Mississippi found the nonresident plaintiffs, who were qualified to do business in the state, to be residents within the meaning of the Act; and the Court of Civil Appeals of Texas likewise has construed its statute, which is similar to that of Mississippi. National Truckers Service, Inc. v. Aero Systems, Inc., 480 S.W.2d 455 (1972, wr. ref. n. r. e.).

(b) The uniform long arm statute was patterned after that of Illinois. See 9B U.L.A. § 1.03 (1966), Commissioners' Note, at 310–313. In a New Mexico case, Clews v. Stiles, 303 F.2d 290 (10 Cir. 1960), this court held that in adopting the language of the Illinois Act, the Legislature of New Mexico also adopted the construction of that Act as announced by the Supreme Court of Illinois. The Illinois Act has been used again and again by foreign corporations. Continental Nut Co. v. Robert L. Berner Co., 345 F.2d 395 (7th Cir. 1965); National Gas Appliance Corporation v. A. B. Electrolux, 270 F.2d 472 (7th Cir. 1959) cert. denied, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960). Since the Utah Act, Section 78–27–24, is virtually identical to the language of the Uniform Act, it would appear that the same reasoning applies in the instant case.

(c) Furthermore every state adopting the Uniform Act and having decided cases available has permitted both domestic and foreign corporations to use it: B. K. Sweeney Co. v. Colorado Interstate Gas Co., Okl., 429 P.2d 759 (Colorado plaintiff using Oklahoma long arm statute); Oil and Gas Ventures, First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744 (D.C.1966) (Delaware corporation with principal place of business in New Jersey suing in New York); Wilshire Oil Company of Texas v. Riffe, 10 Cir., 409 F.2d 1277 (Delaware corporation us-

ing Kansas long arm statute). See also other cases cited in 3(a), *supra.*

(d) The Utah Supreme Court has decided cases in which it has allowed domestic corporations to sue nonresident corporations Foreign Study League v. Holland American Line, 27 Utah 2d 442, 497 P.2d 244 (1972), and Hydroswift Corporation v. Louie's Boats and Motors, Inc., 27 Utah 2d 233, 494 P.2d 532 (1972). In another case, Rudd v. Crown International, 26 Utah 263, 488 P.2d 298 (1971), the plaintiff, an individual resident of Utah, was permitted to sue a nonresident corporation under the Act. These cases indicate two things: (1) domestic corporations are allowed to use the long arm statute; and (2) it is also available to a "resident" as distinguished from the limitation advanced by appellants, i. e., availability to "citizens" only.

■ (e) This leads us to Utah's treatment of nonresident corporations with a permit to engage in business in the state. Section 16–10–103 of the Utah Code provides that such corporations shall "enjoy the same, but no greater, rights and privileges as a domestic corporation . . ." Utah Code Ann. § 16–10–103 (1973). This mandate would require Utah to afford appellee the same access to its courts as it allows domestic corporations. Utah's long arm statute, as we have noted, is not to the contrary. Indeed a holding to the contrary might well run *contra* to the equal protection clause of the Fourteenth Amendment. See, Wheeling Steel Corporation v. Glander, 337 U.S. 562, 69 S.Ct. 1291, 93 L. Ed. 1544 (1949) where the Court held that where a state elects to admit foreign corporations to transact business "the adopted corporations are entitled to equal protection with the state's own

corporate progeny." 337 U.S. 562, at 571, 69 S.Ct. 1291, at 1296. Much earlier the Court had specifically held "that they should have like access to the courts of the country for the protection of their persons and property . . ." Truax v. Corrigan, 257 U.S. 312, 334, 42 S.Ct. 124, 130, 66 L.Ed. 254 (1921).

(f) It is hornbook law that where possible a statute should be construed so that it will be constitutional and in harmony with other statutes. Here Utah has not expressly limited the availability of its long arm statute to citizens of that state; to accept the appellants' contention would be tantamount to reading into the statute a provision that not only would offend the Fourteenth Amendment but also be out of step with Section 16–10–103, *supra.*

■ (g) We read Section 78–27–22, *supra,* as does the Supreme Court of Utah as "prefatory language" (See, *Foreign Study League, supra,* 27 Utah 2d 442, 497 P.2d at 245)—a preamble merely setting forth the purpose of the Legislature in enacting the statute. It is, therefore, neither essential nor controlling in the construction of the Act where the operative sections are clear and unambiguous. Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); Yazoo & Mississippi RR v. Thomas, 132 U.S. 174, 10 S.Ct. 68, 33 L.Ed. 302 (1889); Coosaw Mining Co. v. South Carolina, 144 U.S. 550, 12 S.Ct. 689, 36 L.Ed. 537 (1892). Also see 50 Am. Jur. Statutes, Sec. 152 (1944), 82 C.J.S. Statutes § 349 (1953); Huntworth v. Tanner, 87 Wash. 670, 152 P. 523 (1915) and Continental Oil Co. v. City of Santa Fe, 25 N.M. 94, 177 P. 742 (1918).

The order appealed from is, therefore, affirmed.